UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN MENDAROS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JPMORGAN CHASE BANK, N.A., et al.,<br><br>　　　　Defendants. | Case No.  14-cv-01260-JST<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

In this action for breach of contract and related claims, Defendants Quality Loan Service Corporation ("Quality") and JPMorgan Chase Bank, N.A. ("JPM") each move to dismiss the claims that Plaintiff Mendaros has asserted against them. For the reasons set forth below, their motions to dismiss are GRANTED.

I.   **BACKGROUND**

　　**A.**　**The Parties and Claims**

This action arises out of the foreclosure of property located at 3383 Deer Hollow Drive, which is located in Danville, California ("the property"). Compl. ¶ 1, ECF No. 1.

In 2005, Plaintiff Edwin Mendaros obtained a loan for $1,860,000 from Washington Mutual Bank in Stockton, California ("the loan"). Id., Ex. 2 at 1. The loan was secured by the property under a Deed of Trust, which identified the California Reconveyance Company as the trustee. Id., Ex. 2 at 1.

In 2009, Defendants JPM and Quality became the loan's beneficiary and trustee, respectively. Quality's Req. for Judicial Notice ("RJN"), ECF No. 8, Ex. B & Ex. C;[1] JPM's RJN,

---

[1] Although a court's review on a motion to dismiss is generally limited to the allegations in the complaint, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), courts may properly take judicial notice of material attached to the complaint, and of matters in the public record. Fed.

ECF No. 16, Ex. B & Ex. E.[2]

On March 9, 2009, Quality recorded a Notice of Default ("NOD") with the Contra Costa County Recorder Office. Compl., Ex. 1 at 1. The NOD stated that Mendaros was in default on the loan in the amount of $91,621.35 and that a failure to pay that amount could result in the non-judicial sale of the property. Id. When Mendaros failed to cure the default, a Notice of Trustee's Sale was recorded on September 1, 2010, indicating that the unpaid balance on the loan was $2,356,600.29. RJN, ECF No. 16, Ex. F. An additional Notice of Trustee's Sale was recorded on October 24, 2011, indicating that the unpaid balance on the loan was $2,528,814.87. RJN, ECF No. 16, Ex. G. The property was sold at a public auction on December 19, 2011, and a Trustee's Deed Upon Sale was recorded on June 19, 2012. RJN, ECF No. 16, Ex. H.

Mendaros filed this action on March 18, 2014, asserting the following claims against Defendants JPM and Quality: (1) breach of contract; (2) a claim under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(2); (3) a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681i(a) and 1681s-2(b); and (4) fraud.

Mendaros filed for Chapter 13 bankruptcy on April 16, 2014. See Notice of Stay of Proceedings, Ex. A at 1.

### B.   Prior Actions

Before filing this action, but after the foreclosure on the property, Mendaros filed two lawsuits against JPM and Quality in Contra Costa Superior Court concerning the events giving rise to the foreclosure.[3]  RJN, ECF No. 16, Ex. I & Ex J.

---

R. Evid. 201(b). Here, Quality requests judicial notice of several documents that pertain to the loan, deed of trust, and prior related litigation. ECF No. 8, 13. Because these documents are publicly available and no party disputes their authenticity, Quality's request for judicial notice is GRANTED.

[2] JPM also requests judicial notice of several relevant documents. ECF No. 16. Mendaros filed an opposition to this request. ECF No. 19, Ex. 3. The court will not consider this opposition for any purpose because it does not comply with Civil Local Rule 7-3. Even if the court were to consider the opposition, however, it would still grant the request, because the documents subject to JPM's request are part of the public record and there is no reason to question their authenticity. JPM's request is GRANTED.

[3] JPM contends in its motion that Mendaros filed a third suit in this district, which purportedly was

Mendaros filed the first suit on May 16, 2012, against JPM, Quality, and others ("the first state court action"). RJN, ECF No. 16, Ex. I. Mendaros asserted the following claims: (1) declaratory relief; (2) injunctive relief; (3) a claim for violations of California's Unfair Competition Law; (4) a claim for violations of California Civil Code section 2923.5; (5) cancellation of a written instrument; and (6) quiet title. The gravamen of the complaint was that the defendants' foreclosure on the property was unlawful because they lacked the legal authority to execute the sale. Id. Mendaros voluntarily dismissed this action without prejudice with respect to all defendants on September 10, 2012. RJN, ECF No. 8, Ex. H at 1.

Mendaros filed the second action on December 7, 2012, against JPM, Quality, and others ("the second state court action").[4] RJN, ECF No. 16, Ex. J. Mendaros asserted the following claims: (1) fraudulent inducement to breach of contract; (2) two claims under the Truth in Lending Act; (3) fraud; (4) a claim for violations of California Civil Code section 2923.5; (5) a claim for violations of California's Unfair Competition Law; (6) a claim for violations of the FCRA; (7) defamation; (8) false light; (9) breach of contract; and (10) declaratory relief. Id. The gravamen of the complaint was that the defendants lacked the authority to foreclose on the property and that the foreclosure was therefore illegal. The court granted JPM's motion to dismiss with prejudice all claims asserted against JPM and it entered judgment in favor of JPM and against Mendaros on March 22, 2013. Id., Ex. K. Quality has not filed any documents indicating the outcome of the claims that Mendaros asserted against it in this action.

### C. Jurisdiction

The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

## II. STAY OF PROCEEDINGS

In lieu of filing an opposition to Quality's motion to dismiss, Mendaros filed a notice

---

dismissed on January 28, 2014. JPM cites to "Exhibit L" as containing documents establishing these facts. JPM's request for judicial notice does not contain an Exhibit L, however. Accordingly, the court cannot take judicial notice of this suit.

[4] This filing date refers to the filing of the first amended complaint. JPM contends that the filing date of the original complaint in this action was September 17, 2012, but JPM did not include a copy of this complaint in its request for judicial notice.

3

1   stating that he is staying this action under 11 U.S.C. § 362 on the basis of the ongoing bankruptcy

2   proceedings.  ECF No. 11 at 1.

3         Mendaros' request for a stay under § 362 is not well taken.  Section 362 permits a debtor to

4   stay a lawsuit while bankruptcy proceedings are underway.  Its purpose is to protect the debtor

5   from creditors during the proceedings.  Gordon v. Whitmore (In re Merrick), 175 B.R. 333, 337

6   (9th Cir. B.A.P 1994) ("The automatic stay gives the debtor a breathing spell from his creditors

7   and allows the trustee to marshall assets of the estate for the benefit of creditors.").  Because the

8   purpose of a stay is to protect the debtor's assets from collateral attack by creditors, the stay

9   applies only to actions for affirmative relief filed *against* the debtor, and not to actions initiated *by*

10  the debtor.  Palmdale Hills Prop., LLC v. Lehmen Commer. Paper, Inc. (In re Palmdale Hills

11  Prop., LLC), 654 F.3d 868, 875 (9th Cir. 2011) ("Bankruptcy courts, therefore, differentiate

12  between actions for affirmative relief against the debtor's estate, which are stayed, and defensive

13  actions, which are not.").  Because this action was filed by and not against Mendaros, the action

14  cannot be stayed under § 362.  Mendaro's request to stay is therefore DENIED.

15  **III.   MOTIONS TO DISMISS**

16      **A.   Legal Standard**

17        A pleading must contain a "short and plain statement of the claim showing that the pleader

18  is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Federal Rule of Civil

19  Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. Navarro v. Block, 250

20  F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain

21  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A

22  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

23  the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

24  556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "Threadbare recitals of

25  the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

26  When dismissing a complaint, leave to amend must be granted unless it is clear that the

27  complaint's deficiencies cannot be cured by amendment. Lucas v. Dep't of Corrections, 66 F.3d

28

245, 248 (9th Cir. 1995).

**B.   Analysis**

**1.   Res Judicata**

Quality and JPM move to dismiss the claims that Mendaros has asserted against them on the ground that such claims are barred by res judicata in light of the outcome of the second state court action.

In his opposition, Mendaros contends that this action is not barred by res judicata because the state court lacked jurisdiction to enter judgment against him. ECF No. 19 ¶¶ 4-6. Mendaros appears to base this argument on the contention that JPM and Quality were not, in fact, parties to the loan agreement or the Deed of Trust.

When determining whether a judgment by a California court has a res judicata effect, the Full Faith and Credit Act requires a federal court to apply the res judicata law of California to that judgment. See Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988) (holding that the Full Faith and Credit Act "requires federal courts to apply the res judicata rules of a particular state to judgments issued by courts of that state").

California law requires a party asserting res judicata to show "(1) [a] claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." DKN Holdings LLC v. Faerber, 225 Cal. App. 4th 1115, 1122 (2014) (citation and internal quotation marks omitted). "The party asserting the preclusive effect of a prior judgment bears the burden of establishing it." Id. (citation omitted).

As will be discussed below, the claims that Mendaros has asserted against JPM satisfy all of these elements, but the claims against Quality do not. As such, the court concludes that the claims asserted against JPM are barred by res judicata and must be DISMISSED WITH PREJUDICE. On the other hand, the claims asserted against Quality are not subject to claim preclusion.

### a. Identical Claims

In determining whether a claim or issue is the same, California courts look to the primary rights theory, in which "the violation of a single primary right gives rise to but a single cause of action." San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement, 568 F.3d 725, 734 (9th Cir. 2009) (citation and internal quotation marks omitted). "What is critical to the [primary rights] analysis is the harm suffered; that the same facts are involved in both suits is not conclusive." Id. (citation and internal quotation marks omitted). Under the primary rights theory, claim preclusion will apply regardless of whether a particular cause of action was actually litigated, so long as the party against whom claim preclusion is asserted "had the opportunity" to litigate the claim in the prior action. Weikel v. TCW Realty Fund II Holding Co., 55 Cal. App. 4th 1234, 1245 (1997).

Here, all claims involve the violation of the same primary right that was litigated in the second state court action: the right to be free from an unlawful foreclosure. Although the claims asserted in the instant action differ slightly from those asserted in the second state court action, the gravamen of both complaints is identical. Both complaints are premised on the notion that Defendants lacked the legal authority to foreclose on the property because the instruments based on which the foreclosure was executed were invalid. For that reason, Mendaros had the opportunity to assert in the second state court action the same claims that he has asserted here. See id. This establishes the first element of the test for applying res judicata. See DKN Holdings, 225 Cal. App. 4th at 1123 ("As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. It must therefore be distinguished from the legal theory on which liability for that injury is premised[.]") (internal citation omitted); see also Carollo v. Vericrest Fin., Inc., Case No. 11-cv-4767 YGR, 2012 WL 4343816, at *5 (N.D. Cal. Sept. 21, 2012) (holding that first element of the res judicata test was satisfied in an action for claims arising out of a foreclosure because the right "not to be wrongfully foreclosed upon" was the primary right at issue both in that action and the prior action).

### b. Privity

Mendaros, JPM, and Quality were parties to the second state court action. As such, the

second element also is satisfied.  DKN Holdings, 225 Cal. App. 4th at 1122 (holding that the privity element is met when "the party against whom the doctrine is being asserted was *a party . . . to the prior proceeding*") (emphasis added).

### c. Final Judgment

The third element requires a showing that the prior case was finally decided on the merits. Id.

JPM and Quality assert that the second state court case was dismissed with prejudice, and that this dismissal satisfies this element.  Fed. Home Loan Bank of S.F. v. Countrywide Fin. Corp., 214 Cal. App. 4th 1520, 1527 (2013) ("Dismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again.") (citations and internal quotation marks omitted); RJN, Ex. J at 2.

The court concludes that this element is met only with respect to JPM, because the dismissal of the second state court action applies only to the claims that Mendaros asserted against that defendant.  See RJN, ECF No. 16, Ex. K.  Quality has not submitted any judicially noticeable documents showing that the claims asserted against it in the second state court action were finally adjudicated on the merits.

### 2. Failure to State a Claim

Having concluded that the claims asserted against Quality are not barred by res judicata, the court now turns to the question of whether these claims are subject to dismissal under Rule 12(b)(6).

### a. ECOA

Mendaros alleges that Quality, as an agent for JPM, violated his rights under the ECOA by "revoking and changing the terms of an existing credit arrangement without cause" and by failing to give him thirty days' notice of this adverse action.  Compl. ¶¶ 38-39.  The court interprets "credit arrangement" to refer to the loan and the Deed of Trust.

The ECOA defines an adverse action as a "[d]enial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or

7

on substantially the terms requested." 15 U.S.C. § 1691(d)(6). The ECOA's main purpose is to prevent discriminatory lending practices based on a credit applicant's sex, marital status, race, color, religion, or national origin. Brothers v. First Leasing, 724 F.2d 789, 793 (9th Cir. 1984). A plaintiff may bring two types of claims under the ECOA.

The first type of claim involves a direct allegation of discrimination in lending practices, and it requires a plaintiff to show that: (1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified. Harvey v. Bank of Am., N.A., 906 F. Supp. 2d 982, 990-91 (N.D. Cal. 2012).

The second type of claim requires an alleged violation of one of the ECOA's procedural requirements. One such procedural requirement provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). Under the ECOA, and "adverse action" is defined as:

> [A] denial or revocation of credit, a change in the terms of an existing credit arrangement, or refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(6). A creditor adequately provides a statement of reasons when it issues a written statement or a notification of adverse action to the applicant that includes a disclosure of the applicant's right to a statement of reasons. Id.

Here, Mendaros alleges that Quality failed to give him thirty days' notice of an adverse action. This claim is of the second type.

Although no party has cited any authority on point, and it appears to be a question of first impression, the court concludes that Mendaros cannot bring an ECOA claim for failure to provide a statement of reasons against Quality because Quality's role in the events giving rise to the claims in the complaint was limited to that of trustee under the Deed of Trust, see Compl. ¶¶ 3, 28, 41, and a trustee is not a "creditor" within the meaning of the ECOA. A creditor is defined in the ECOA as "any person who regularly extends, renews, or continues credit; any person who

regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). Under the Deed of Trust, Quality had the authority to sell the property in case of default and to reconvey the property in the event of full repayment. Compl., Ex. 2 at 3. Neither of these acts involves the extension, renewal, or continuation of credit.

The reported case most like the one at bar is Robinson v. Veneman, 124 F. App'x 893 (5th Cir. 2005). In that case, plaintiffs challenged a valuation of their property by the Farm Service Agency in a lease/buyback program. Id. at 895. The court concluded that even though

> (1) the lease/buyback program was an FSA Preservation Loan Servicing Program, (2) some FSA documents referred to the Robinsons as borrowers, and (3) the leases between the FSA and the Robinsons mentioned the possibility that the FSA might finance their purchase of the property, there is no evidence that the Robinsons ever sought or received credit from the FSA.

Id. at 896. Accordingly, Robinson court held, the Robinsons' dealings with the FSA did not involve a credit transaction and the ECOA did not apply. Id.

Here, Quality's association with any underlying credit transation is even more attenuated than the relationship between the FSA and the plaintiffs in Robinson. The Plaintiffs could not have requested credit from Quality, and Quality would not have extended it. Because Quality is not a creditor within the meaning of the ECOA, and because this defect cannot be cured by amendment, this claim is DISMISSED WITH PREJUDICE.

**b.     FCRA**

Mendaros alleges that Quality violated Mendaros' rights under the FCRA by failing to conduct a reasonable investigation into his claims that the information in the NOD was incorrect. Compl. ¶ 45.

The purpose of the FCRA is to protect consumers by imposing a set of duties upon consumer reporting agencies ("CRAs"). Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009). The statute defines a CRA as "any person which . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on

9

consumers for the purpose of furnishing consumer reports to third parties[.]" 15 U.S.C. § 1681a(f). The statute's goal is to ensure that CRAs behave in a fair and impartial way while assembling, evaluating, and disseminating information regarding consumers' credit. Gorman, 584 F.3d at 1153.

Because Mendaros appears to base this claim on two distinct sections of the FCRA, 15 U.S.C. §§ 1681i(a) and 1681s-2(b), the court addresses the merits of each in turn.

### i. 15 U.S.C. § 1681i(a)

Section 1681i(a) provides, in relevant part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies *the agency* directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate* and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a) (emphasis added).

This section, by its express terms, limits the duty to conduct a reasonable investigation to consumer reporting agencies. A "consumer reporting agency" is defined as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

Here, the allegations in the complaint do not give rise to the reasonable inference that Quality is a CRA, because the complaint contains no allegation suggesting that Quality engaged in any practice pertaining to consumer credit information or credit reports. As discussed above, Quality's role in the events giving rise to Mendaros' claim was limited to that of a trustee in connection with the Deed of Trust. Because the Deed of Trust contains no language suggesting that Quality has the authority as trustee to perform actions pertaining to the reporting of consumer

credit, this claim must be DISMISSED WITH PREJUDICE.

### ii. 15 U.S.C. 1681s-2(b)

In addition to imposing duties on CRAs, the FCRA also imposes certain duties on "furnishers," which are entities that provide credit information to consumer reporting agencies in the ordinary course of business. Gorman, 584 F.3d at 1153-54. One such duty is to, upon notice from the CRA that the consumer disputes information previously provided by the furnisher, conduct an investigation with respect to the disputed information and take steps to ensure that any errors are corrected. See 15 U.S.C. § 1681s-2(b). This duty arises "only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." Gorman, 584 F.3d at 1154 (citation omitted).

Mendaros' claim under Section 1681s-2(b) is subject to dismissal for two reasons. First, no facts have been alleged in the complaint suggesting that Quality has furnished any information to a CRA. As discussed above, Quality has no authority under the Deed of Trust to make reports regarding Mendaros' credit. As such, Quality is not a furnisher within the meaning of § 1681s-2(b).

Second, notice of a dispute triggering the duty to notify must come from a CRA, not a consumer. Id. Here, Mendaros alleges that he disputed the contents of the NOD directly to Quality, as opposed to a CRA. See Compl. ¶¶ 8, 45-46 (alleging that "[n]otice was sent to Defendant specifically asserting such a fatal defect in the false instrument," that Quality was "put on notice by the consumer that false information was being used[,]" and that Quality "elected to ignore Plaintiff's warning about the false information"). Thus, even assuming that Quality could be considered a furnisher within the meaning of the FCRA, this claim would nevertheless fail because the duty to investigate and correct never arose. Gorman, 584 F.3d at 1154.

Because the deficiencies of this claim cannot be cured by amendment, the claim is DISMISSED WITH PREJUDICE.

     **c.**  **State Claims**

Because all of the federal claims that Mendaros has asserted in the complaint have been dismissed with prejudice, the court declines to exercise supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. 1367(c).  These claims are DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

JPM and Quality's motions to dismiss are GRANTED in their entirety.  All claims asserted against JPM and all federal claims asserted against Quality are DISMISSED WITH PREJUDICE.  All remaining state-law claims are DISMISSED WITHOUT PREJUDICE.  The Clerk shall terminate this action.

**IT IS SO ORDERED.**

Dated:  July 9, 2014



                 JON S. TIGAR
                United States District Judge